UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT J. AUER JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:09-CV-340 CAN |
| ) | |
| MICHAEL J. ASTRUE ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On July 7, 2009, Plaintiff Robert J. Auer Jr., ("Auer"), filed his complaint in this Court. On January 27, 2010, Auer filed an opening brief asking this Court to reverse judgment in his favor or remand this matter to the Commissioner. On May 12, 2010, Defendant, Commissioner of Social Security ("Commissioner"), filed a response. On June 2, 2010, Auer filed his reply brief. This Court now enters its ruling based upon the record of this case, which includes the pleadings, motions, the administrative record and the briefs of the parties.

**I.  PROCEDURE**

On August 17, 2004, Auer filed an application for disability insurance benefits, alleging an onset date of November 20, 2003. Auer claims he is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act. See 42 U.S.C. §§ 216(I), 223; 42 U.S.C. §§ 1611, 1614.

On March 30, 2007, Auer initially appeared at a hearing before an Administrative Law Judge ("ALJ") and subsequently requested review from an Appeals Council. On October 16, 2007 the Appeals Council remanded the ALJ's decision for further consideration. On May 23, 2008, a different ALJ conducted a second hearing. On December 29, 2008, the second ALJ

1

issued a decision denying Auer's application, finding that Auer was not disabled.

On February 11, 2009, Auer appealed the second ALJ's decision to the Appeals Council. On June 9, 2009, the Appeals Council denied review; and, as a result, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on July 29, 2009, Auer filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

Auer was 46 at the time of his alleged onset of disability and was 50 at the time of his hearing before the ALJ. Auer has a high school diploma, and his past relevant work includes work as a construction worker, roofer, and an installer of heating and air conditioning equipment. On November 20, 2003, Auer was admitted to St. Anthony's with an acute cervical spine fracture, acute head neck chest trauma, an acute chest contusion, an acute sterna fracture and rhabdomyolysis, as a result of a workplace injury. As treatment for his injuries, Auer refused surgery, opting for a neck brace and was discharged on November 27, 2003.

In January of 2004, Auer was referred to Patrick Russell, M.D. for evaluation and treatment of poor short term memory since the accident. Dr. Russell diagnosed Auer with a concussion, as well as "post-concussion" syndrome, post-traumatic vestibulopathy and chronic post-traumatic myofascial pain syndrome. Auer also began physical therapy and was instructed by Gary Lam, M.D. not to lift over ten pounds or to look upward or downward.

In May of 2004, Dr. Russell referred Auer to Wendell A. Rohrer, Ph.D. to be evaluated

for neurognitive difficulties. Auer reported having headaches once or twice a week and being very depressed. Auer was diagnosed with a cognitive disorder, a major depressive disorder and a history of polysubstance abuse. Shortly thereafter, Auer returned to see Dr. Lam and reported that his pain had not decreased and that even after light work, his symptoms worsened.

On July 15, 2004, Auer was seen by Gene W. Grove, M.D. for constant thoracic spine pain that with certain activity was aggravated by looking up or down for any amount of time, bending, and driving for long distances. Dr. Grove believed that Auer was making progress in his rehabilitation program but still prescribed methadone for Auer.

On August 2, 2004, Dr. Russell reported that after taking Relpax, Auer's headaches had been brought under control, as Auer was only suffering from two to three headaches a month. However, Dr. Russell still proscribed amitriptyline, Norflex, OxyContin, Xanax and Paxil. Also, in early August 2004, Auer was seen by Dr. Lam, who noted Auer's pain was the same and that Auer had stopped taking the methadone because it caused him to become lethargic. Auer was allowed to return to work; but he was not allowed to lift over ten pounds, look upward or downward or forcefully use his arms. Dr. Lam then referred Auer to Joan K. Szynal, M.D., who opined that Auer could not lift over ten pounds with his upper right extremity.

In September of 2004, Dr. Russell opined that he had nothing further to recommend from a neurologic perspective, since Auer's pain control had markedly improved and he had not suffered a migraine for more than two weeks. On September 24, 2004, Auer was seen by David R. Simmons, Ph.D., who diagnosed Auer with major depressive disorder aggravated by current functional limitations and ongoing difficulties with postconcussion syndrome. His GAF was 55

and Dr. Simmons recommended psychotherapy.[1]

On November 3, 2004, Auer was seen by A. Majid Malik, M.D., who reported Auer to be depressed with psychomotor retardation. Dr. Malik diagnosed Auer with major depressive disorder, mild cognitive difficulties, post head injury and a history of polysubstance dependence. Dr. Malik then increased some of his medications. On November 24, 2004, Dr. Szynal noted Auer was complaining of migraines and that he was reaching a plateau in what could be done for his thoracic pain.

On December 6, 2004, Auer was evaluated by Peter E. Sices, M.D., at the request of the Commissioner. In his report, Dr. Sices noted limitations in Auer's range of motion in his cervical, right shoulder and lumbar spine. He also opined that carrying light objects in either arm should not be a problem. Again, at the request of the Commissioner, on December 13, 2004, Auer was evaluated by Alan Wax, Ph.D. Dr. Wax noted that Auer complained of memory problems and diagnosed Auer with major depressive disorder without psychotic features, assigning a GAF of 61. On December 28, 2004, Auer had right shoulder arthroscopic subacromial decompression surgery.

On January 11, 2005, a non-examining, State agency physician found that Auer could do light work with occasional postural limitations. The findings were affirmed by another non-examining, State agency physician on May 23, 2005. On January 12, 2005, a non-examining, State agency psychologist found Auer capable of simple, repetitive tasks. These findings were affirmed by another non-examining, State Agency psychologist on May 24, 2005.

---

[1] GAF scores represent on a single day an individual's overall level of functioning, including symptom severity. The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning.

On February 7, 2005, Auer saw Dr. Malik complaining of increased depression, so Auer's Paxil prescription was decreased and was, also, prescribed Cymbalta. On February 7, 2005, Auer saw Craig Erekson, M.D. for a post surgical evaluation, and Auer stated that he had continued improvement and had no complaints. However, on February 23, 2005, Dr. Szynal noted that Auer was still relatively symptomatic in his shoulder and continued to prescribe OxyContin and Percocet. On March 21, 2005, Dr. Malik reported Auer was doing much better and his depression was improved. By this time, Auer had also registered for vocational rehabilitation.

On May 17, 2005, a physical therapist reported that Auer had mildly decreased range of motion and noted that his progress had plateaued, so Auer was discharged to a home exercise plan. On May 18, 2005, Dr. Erekson released Auer to return to work immediately due to maximum medical improvement. Auer last saw Dr. Szynal on May 25, 2005, when Auer was deemed to be at maximum medical improvement despite continuing discomfort. Auer was given work restrictions prohibiting lifting over his shoulder height with the right arm, no lifting over 15 to 20 pounds, and no consistent upward or downward gazing. Dr. Szynal commented that Auer had areas of verbal and visual memory delay but that these areas also continued to show improvement. Auer continued to remain on Percocet and OxyContin.

On June 28, 2005 and July 1, 2005, Auer was evaluated by Jan Earl Warner, Ph.D. at the request of Vocational Rehabilitation Services. Dr. Warner diagnosed adjustment disorder with mixed anxiety and depressed mood, dysthymia, pain disorder, mild amnestic disorder, previous substance abuse, and a GAF of 50.

On January 16, 2006, Auer was seen by Bikash Agarwal, M.D. who diagnosed Auer

with Type 1 diabetes, chronic renal failure, hypertension, depression, chronic back pain, migraines, diabetic retinopathy, left shoulder pain and back pain.  As a result, Dr. Agarwal prescribed Seroquel for Auer's anxiety and agitation.  On January 30, 2006, Auer again saw Dr. Agarwal and stated that he was getting relief from his migraines after taking one pill of Relpax.  On March 7, 2006, Dr. Agarwal saw Auer as Auer was feeling very tired and fatigued.  Dr. Agarwal diagnosed depression with multiple somatic symptoms, fatigue and tiredness.  Dr. Agarwal noted it could be from sleep apnea and prescribed Provigil.  On April 23, 2006, Auer underwent a polysomnogram which showed moderate obstructive sleep apnea and was prescribed a CPAP.  On August 21, 2006, however, Auer again met with Dr. Agarwal and reported that he had not been using his CPAP regularly because he could not tolerate it.

On February 8, 2007, Auer saw Jerome Skelly, M.D. for an initial visit for primary care.  Dr. Skelly noted that Auer had migraine headaches and recommended Auer increase his activity and avoid caffeine.  However, on May 21, 2007, Dr. Skelly noted that Auer was still having headaches once a week.  On June 4, 2007, Thomas R. Keucher, M.D. evaluated Auer upon referral.  Upon examination he found Auer's neck movement was less than 50% of normal, his arm elevation was tight but his passive range of motion at the shoulder was full.  Dr. Keucher noted that the majority of Auer's muscle stiffness was chronic and to reduce his pain Auer would have to work to improve his range of motion.

On February 14, 2008, Auer was seen by Dr. Keucher, with a complaint of numbness in his right arm and hand which was believed to be carpal tunnel syndrome but unrelated to his neck.  Auer was prescribed a wrist splint for the right side.  On March 27, 2008, Dr. Malik noted that Auer was depressed and unable to tolerate Cymbalta.  As a result, Auer's Cymbalta

6

prescription was discontinued, his Seroquel prescription was increased, Celexa was prescribed, and Xanax and Wellbutrin were continued.

On May 14, 2008, social worker Kathleen Marshall completed a mental impairment questionnaire treatment and evaluation update regarding Auer, assigning Auer a GAF of 55-60. On the same date, Dr. Malik and Marshall wrote to Auer's representative to summarize his course of treatment. In a June 3, 2008 letter, Cathleen Cassady-Boutwell, the disability coordinator for the Ivy Tech Community College, stated that she worked with Auer's disability issues in 2006 and that, in her professional opinion, Auer required disability support status.

After receiving a second denial before the second ALJ, Auer retained a licensed attorney to represent him before the SSA's Appeals Council. On February 11, 2009, Auer's attorney submitted a memorandum of law in support of his appeal. Additional documents were also supplied to the Appeals Council, including items already contained in the record. In addition Auer's attorney provided new medical opinion statements from Auer's physicians, Dr. Szynal and Dr. Malik, collected in response to the second ALJ's ruling.

B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate

discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

    C.    Auer's Motion for Reversal or Remand

To be entitled to benefits under the Social Security Act, Auer must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not listed, the ALJ assesses the claimant's residual functional

capacity ("RFC"), which in turn is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The ALJ found that Auer had severe impairments of depression, diabetes mellitus; residuals from cervical/thoracic injury (at C2, T1, T2 and T3); degenerative disc disease (at C5, C6 and T5 to T8); and right shoulder impingement. The ALJ determined that Auer's impairments or combination of impairments were not listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Auer's RFC allowed him to perform light work as defined in 20 C.F.R. 404.1567(b) except that he could not use his shoulder to reach upward with the right upper extremity, could not consistently gaze upward or downward; could not do more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; could not tolerate concentrated exposure to extremes of cold, wetness, or vibration; could not work at unprotected heights or operate hazardous moving machinery; and was limited to simple routine tasks. The ALJ found that Auer was unable to perform his past relevant work. However, after considering the testimony of the vocational expert the ALJ found that Auer could perform other jobs that exist in significant numbers in the national economy. Thus, the ALJ determined that Auer was not disabled. Accordingly, the ALJ denied Auer's application for disability insurance benefits.

The major issues this Court must resolve are: (1) whether Auer is entitled to a remand for consideration of clarifying statements from treating physicians, (2) whether the ALJ erroneously found Auer's headaches non-severe, (3) whether the ALJ correctly assessed Auer's credibility,

(4) whether the ALJ's determination of Auer's RFC was supported by substantial evidence, and (5) whether the ALJ's step five determination was supported by substantial evidence. This court will address each of Auer's arguments in turn.

> 1. The Appeals Council did not err in failing to remand Auer's case after viewing the supplemental medical opinions; and, as such, the ALJ fairly and fully developed the record.

Auer argues that this matter should be remanded in consideration of clarifying statements and opinions of Auer's physicians which were submitted to the Appeals Council. After the ALJ did not find Auer to be disabled, Auer submitted new medical statements from his physicians, which directly addressed the ALJ's findings regarding Auer's claims.

Remand may be ordered where new material evidence is adduced that was, for good cause, not presented before the agency. 42 U.S.C. § 405(g). For the purpose of a remand, "materiality" means that there is a "reasonable probability" that the Commissioner would have reached a different conclusion had the evidence been considered, and "new" means evidence not in existence or available to the claimant at the time of the administrative proceeding. See Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). To show good cause, a plaintiff must demonstrate a "sufficient reason for failing to incorporate the evidence into the record during the administrative proceeding." Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993).

To begin, this Court has doubts whether the documents submitted are "new" for the purposes of remand. Auer argues that because the Appeals Council added the supplemental opinions to the record after reviewing them, it implies that the evidence was deemed new. However, a review of the evidence reveals that the opinions of Dr. Szynal, Dr. Malik and Ms.

Marshall are all medical reports, each based on existing evidence in the record from the time of the hearing. As such, the opinion statements are more akin to "derivative evidence." See Similia v. Astrue, 573 F.3d 503, 522 (7th Cir. 2009) (defining derivative evidence as a physician based conclusion on evidence that has long been available). Such evidence is not fairly characterized as new. Sample, 999 F.2d at 1144.

In addition, this Court has doubts whether the documents submitted are "material" for the purposes of remand. Auer maintains that the supplemental opinions are material, as they would have likely changed the ALJ's decision. However, Dr. Szynal has not seen Auer since May 25, 2005, indicating to this Court that her opinion is based entirely on Auer's subjective complaints, and not a new evaluation of Auer's condition. If a physician's opinion is "based solely on the patient's subjective complaints, the ALJ may discount it." Ketelboeter v. Astrue, 550 F.3d 620, 625 (7th Cir. 2008). Likewise, the opinion of Dr. Malik and Ms. Marshall was also based on evidence that had long been available and was apart of the record at the time of the ALJ's decision. As a result, this Court believes the supplemental opinions are unlikely to have changed the determination made by the ALJ.

Regardless, even if this Court considered the supplemental opinions to be new and material, Auer can not show that he had good cause for failing to include the documents in the record during the administrative proceedings. Auer attempts to obtain a remand by supplementing post-decision medical opinions that criticize the conclusions found by the ALJ. Auer claims that he is not providing unsolicited clarification to the ALJ's opinion but, rather, that he is merely attempting to address the ALJ's concerns. However, allowing this practice of supplementing the record with medical opinions tailored to rebut the ALJ's opinion would

"amount to automatic permission to supplement records . . . after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process." Perkins, 107 F.3d at 1296. Such practice is not permitted. Id.

Next, Auer states that he had good cause for not submitting the opinions during the administrative proceedings, as Auer was represented at the hearing by a non-attorney and that there was no valid waiver of counsel. This Court disagrees. An SSI applicant's right to be represented by counsel at a disability hearing is statutory, but it may be waived. Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007), see 42 U.S.C. § 406. To ensure valid waivers, ALJ's must explain to *pro se* claimants "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." Id. An ALJ's failure to obtain a valid waiver of counsel does not alone warrant remand; rather, it merely heightens the ALJ's duty to develop the record. Id. When an ALJ fails to adequately inform an unrepresented claimant of the right to counsel, the law requires that the ALJ "scrupulously and conscientiously probe into, inquire of and explore for all relevant facts." Id. at 841-42. However, a "significant omission" is usually required before the reviewing court will find that the ALJ failed to assist a claimant in developing the record fully and fairly. Nelson v. Apfel, 131 F.3d 1228, 1235 (7th Cir. 1997). Further, an omission is significant only if it is prejudicial. Id.

In the immediate case, this Court finds that the ALJ fully and fairly developed the record. Auer's administrative record is a voluminous account, containing over eight-hundred pages, mostly consisting of Auer's medical records. As discussed in greater detail below, this Court is satisfied with the ALJ's thorough consideration of all the evidence in the record, and does not

see any significant omissions warranting a remand.

Finally, Auer argues that, because the ALJ did not contact any of Auer's treating physicians, all of whom failed to opine that Auer was disabled, the ALJ did not properly develop the record. In particular, Auer notes a lack of consideration of Dr. Szynal's opinion as a significant omission. Despite these assertions, however Auer does not present any authority that requires the ALJ to contact each of a claimant's physicians before ruling. Accordingly, this argument is un-persuasive. In addition, this Court notes that the ALJ dedicated nine pages in his opinion to discussing the record evidence, citing numerous times to the opinions of Auer's physicians.

As such, this Court finds that the Appeals Council did not err in failing to remand the case to the ALJ for clarification of the supplemental statements from Auer's physicians; and, as a result, the ALJ fully and fairly developed the record.

> 2. The ALJ's determination that Auer's headaches are a non-severe impairment is supported by substantial evidence.

Auer argues that the ALJ erroneously found his headaches to be a non-severe impairment. A severe impairment is one that significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1521; Taylor v. Schweiker, 739 F.2d 1240, 1242 (7th Cir. 1984). Basic work activities are the abilities needed to do most jobs such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, seeing, hearing, speaking, understanding, remembering simple instructions, use of judgment, responding appropriately to supervision and co-workers, and dealing with changes in a routine work setting. See 20 C.F.R § 404.1521(b); Bunch v. Heckler, 778 F.2d 396, 401 (7th Cir. 1985). The statements of the claimant alone are insufficient to establish a severe impairment. 20 C.F.R. §

404.1508. Instead, a physical or mental impairment must be established by medical evidence through signs, symptoms, and laboratory findings. Id.

While the ALJ found that Auer's depression, diabetes mellitus, residuals from cervical/thoracic injury, degenerative disc disease and his right shoulder impingement were severe impairments, the ALJ also concluded that Auer's headaches were non-severe. Auer claims that this was in error as the record seemed to indicate that Auer's complaints of headaches met the *de minimus* standard of finding an impairment as "severe." In his opinion, the ALJ noted that Auer had a history of chronic headaches and complained of suffering from migraines two or three times a month. Despite this evidence, the ALJ still perceived Auer's headaches to be non-severe. In his explanation, the ALJ cited to one of Auer's treating physicians, Dr. Skelly, who opined that Auer's headaches were marginal and were being successively treated. In addition, the ALJ considered Auer's subjective testimony regarding his headaches to be unreliable because Auer's other doctors did not indicate that Auer suffered from headaches of such extreme limitations. Finally, the ALJ noted that Auer suffered from headaches prior to his onset of disability in November of 2003 but was still able to participate in substantial gainful activity at that time. As such, the ALJ reasoned that, because 20 CFR 404.1521 states that "an impairment . . . is not severe if it does not significantly limit your . . . ability to do basic work activities" and Auer was performing basic work activities while allegedly suffering from the headaches, Auer's headaches were not severe as defined under the Social Security's regulations.

This Court finds that the ALJ sufficiently considered and discussed the record evidence in finding that Auer's headaches were a non-severe impairment. As such, this Court concludes that the ALJ's findings are supported by substantial evidence.

### 3. The ALJ's determination of Auer's credibility is also supported by substantial evidence.

Auer additionally argues that the ALJ's credibility determination is insufficiently explained and erroneous. Auer specifically argues that the ALJ failed to consider the limiting effects of all of his impairments because the ALJ did not acknowledge Auer's spinal injuries or his methadone prescription. However, this Court finds the ALJ's determination of Auer's credibility to be substantially supported and sufficiently explained.

Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). See also Prochska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006). Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 915. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

Auer argues that the ALJ made an erroneous credibility determination and failed to explain his reasoning. Specifically, Auer claims the ALJ failed to consider Auer's testimony regarding the limiting effects of Auer's methadone prescription and Auer's spinal injury.

15

However, as noted earlier, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice, 384 F.3d at 370. While the ALJ did not specifically acknowledge Auer's methadone prescription, the ALJ did note that Auer took Percocet for his pain and noted the side-affects that Auer suffers from taking this medication. Similarly, while the ALJ did not discuss the specific effects from Auer's spinal injury, the ALJ thoroughly discussed Auer's stated limitations from his physical impairments generally. Indeed, the ALJ's discussion of Auer's testimony regarding these limitations amounted to nearly a half a page of the ALJ's opinion.

Further, this Court notes that the ALJ's credibility determination was grounded on numerous other factors, relying heavily on Auer's medical reports, treatment notes, treatment history, and Auer's own testimony. For instance, the ALJ noted that although Auer had alleged constant and incapacitating pain for which nearly constant rest was Auer's only relief (plus pain medication), there was no objective medical evidence to support Auer's claims. In addition, the ALJ concluded that Auer's failure to raise his pain issues with his physicians implied that his testimony about their limitations was unreliable. Further, the ALJ also relied on Auer's own testimony regarding Auer's daily activities; such as woodworking, shooting sports and visiting with family, to support his determination that Auer's testimony regarding limiting pain was not fully credible. This Court considers the ALJ's discussion of these factors to be adequately articulated and sufficiently supported by the record evidence.

Finally, Auer claims that the ALJ failed to sufficiently articulate why Auer was credible before May 26, 2005 but not after that date. This Court finds this argument to be confusing and un-persuasive. The only place where the ALJ notes the date of May 26, 2005 is in the ALJ's

16

consideration of medical opinion evidence. Therefore, contrary to Auer's assertions, this Court notes that the ALJ did not rely on this date as part of his credibility determination.

Accordingly, because the ALJ relied on substantial evidence in the record and sufficiently articulated his reasoning for discrediting Auer's testimony, this Court concludes that the ALJ's credibility determination is reasonable.

          4.       <u>The ALJ's RFC determination is supported by substantial evidence.</u>

Further, Auer argues that the ALJ improperly determined his RFC, contending that the ALJ failed to consider Auer's mental limitations. In particular, Auer argues that the ALJ failed to explain how the RFC finding that Auer could still perform "simple routine tasks" accounted for Auer's cognitive impairments.

A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005). However, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. <u>Rice v. Barnhart</u>, 384 F.3d 363, 371 (7th Cir. 2004).

Auer argues that the ALJ did not provide a detailed explanation in determining Auer's mental RFC. This Court disagrees. Instead, this Court notes that the ALJ extensively analyzed Auer's mental impairments at Step Three of the opinion. Then, as part of his RFC finding, the ALJ clearly stated that his prior discussion of Auer's cognitive impairments was incorporated and accounted for when determining Auer's RFC. (Tr. 34). The ALJ also specifically stated how the cognitive impairments were accounted for in the RFC finding, thereby building the requisite logical bridge from the evidence to his conclusion. <u>See</u> <u>Haynes</u>, 416 F.3d at 626.

17

Auer also vaguely claims that the ALJ ignored an entire line of evidence when articulating the discrepancies between competing opinions, specifically those of Dr. Warner and Dr.'s Kladder and Neville. This Court find the argument without merit. The ALJ sufficiently explained his conclusion in regards to the findings opined by Dr. Warner. Similarly, the ALJ also sufficiently articulated his finding that the opinion of the Disability Coordinator carried no significant weight because her opinion on Auer's disability status was based on his alleged inability to complete work in only a classroom setting. Likewise, the ALJ noted that the opinions of the State agency medical consultants best represented the objective medical evidence and largely aligned with the ALJ's RFC determination. Accordingly, this Court finds that the ALJ properly accounted for Auer's cognitive impairments and sufficiently explained how they were incorporated into his RFC finding that Auer could still perform "simple routine tasks."

     5.  <u>The ALJ's Step Five determination is supported by substantial evidence.</u>

Finally, Auer argues that the ALJ failed to make a proper inquiry regarding the testimony of the vocational expert and, therefore impermissibly relied on the vocational expert's ("VE") testimony. At Step Five, if the claimant cannot perform his past relevant work, then the ALJ must determine if he can perform other work in society. <u>See</u> 20 C.F.R. § 404.1520(g). If the claimant can perform a significant number of jobs available in the economy then the claimant is not disabled. <u>Id</u>. When a VE provides testimony about the requirements of a job or occupation, and there is an apparent conflict between the VE's testimony and the information provided in the DOT, the ALJ has an affirmative responsibility to obtain a reasonable explanation. <u>Overman v. Astrue</u>, 546 F.3d 456, 462 (7th Cir. 2008). However, where claimant's counsel does not identify a conflict at the hearing, claimant must show that the conflict was obvious enough that the ALJ

should have picked up on it without any assistance. Id.

Auer first argues again that the ALJ failed to obtain a valid waiver of counsel from Auer. Auer also argues that the ALJ failed to develop the record because his non-attorney representative failed to question the VE regarding the finding that 1,458 jobs were available. As noted earlier, an ALJ's failure to obtain a valid waiver of counsel does not alone warrant remand; rather, it merely heightens the ALJ's duty to develop the record. Skinner, 478 F.3d at 841. However, this Court has already found that the ALJ fairly and fully developed the record. As such, this Court considers it unnecessary to again address that issue here. Rather, this Court will focus on Auer's second argument, that the ALJ failed to resolve alleged inconsistencies in the VE's testimony.

Second, Auer contends that the ALJ erred in failing to inquire about the VE's testimony, which Auer claims conflicted with the DOT, because the jobs identified did not state whether they required consistent upward or downward gazing. This Court finds this argument unpersuasive, because the ALJ reasonably relied on the VE's testimony. At the hearing, the VE testified that a hypothetical individual described by the ALJ was capable of performing jobs as a packing line worker, ticker, and production assembler and found that these jobs constituted a significant number of jobs in the national economy. Auer is correct that the DOT does not specifically indicate whether these jobs require upward or downward gazing, which were listed in the ALJ's RFC. However, the ALJ sufficiently articulated the reason for this discrepancy, noting that the VE spoke through her own knowledge, experience and professional research, thereby enabling her to testify that a limitation on gazing was within the parameters listed. (Tr. 37). An ALJ is free to accept testimony from a VE that conflicts with the DOT when, for

19

example, the VE's experience and knowledge in a given situation exceeds that of the DOT's authors.  <u>Overman v. Astrue</u>, 546 F.3d 456, 464 (7th Cir. 2008).  Accordingly, this Court finds the ALJ's reliance upon the VE's testimony to be reasonable and his reasons for doing to be sufficiently articulated.

### III. CONCLUSION

For the aforementioned reasons, this Court concludes that the ALJ fairly and fully developed the record.  Accordingly, the ALJ's determination that Auer's headaches were a non-severe impairment is sufficiently articulated.  Similarly, the ALJ's determination of Auer's credibility is substantially supported.  In addition, the ALJ's RFC determination is supported by a sufficiently articulated analysis.  Finally, this Court concludes that the ALJ's Step Five determination was supported by substantial evidence.  Therefore, Auer's motion for reverse or remand is **DENIED**. [Doc. No. 23].  Accordingly, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 15th Day of July, 2010.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge